IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

|                                              | )  |                          |
|----------------------------------------------|----|--------------------------|
| CHRISTOPHER L. WALKER,                       | )  |                          |
| Plaintiff,                                   | )  |                          |
| v.                                           | )  | CIVIL NO. 3:10cv526-HEH  |
| DOVETAILS, INC.,<br>d/b/a CAPITOL GRANITE AND MARBLE, | )  |                          |
| Defendant.                                   | )  |                          |

**REPORT AND RECOMMENDATION**

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the Plaintiff's motion for attorneys' fees and costs (Docket Nos. 7 and 15). The matter has been fully briefed and the Court has entertained oral argument, at which juncture the Court expressed its concern that the supporting documentation in support of an award of attorneys' fees was insufficient. The Court therefore ordered the Plaintiff to supplement its motion with additional evidence (Docket No. 13) which has been provided (Docket No. 15). The Court has also permitted the Defendant the opportunity to object to the Plaintiff's supplemental evidence, but no objection has been noted. For the reasons set forth herein, it is the Court's recommendation that the Plaintiff's motion for attorneys fees be GRANTED, in part, and DENIED, in part, and that the Defendant be ORDERED to pay to the Plaintiff the sum of $4,000.00 in attorneys' fees and the additional amount of $573.92 in costs.

# I. BACKGROUND

In the Fall of 2009, Dovetails, Inc. d/b/a Capitol Granite and Marble ("Defendant" or "Capitol"), reached a settlement with the U.S. Department of Labor, Wage and Hour Division based on its admitted failure to compensate approximately fifteen (15) employees for overtime employment, as required by the Fair Labor Standards Act ("FLSA"). (Complaint ¶ 1; Def.'s Br. Opp'n Mot. Atty.'s Fees ("Def.'s Br.") at 3.) Two employees, Melvin Walker ("M. Walker"), and his brother, Christopher Walker ("Plaintiff" or "C. Walker"), rejected the terms of the settlement, reserving the right to file a private lawsuit. (Id.)

On November 20, 2009, M. Walker filed an action against Capitol in this Court seeking unpaid overtime compensation and related relief. Melvin H. Walker v. Dovetails, Inc., Case No. 3:09cv735 3:09cv735. In an attempt to join his brother's action, C. Walker filed a "notice of filing additional consent to join suit as party plaintiff" on February 25, 2010. Id. at Docket No. 8. On July 23, 2010, the Court determined that C. Walker's attempt to join the existing suit was a legal nullity because no certified class existed, as required for such joinder. Id. at Docket No. 22. Therefore, on July 28, 2010, C. Walker filed his own action against Capitol, seeking his unpaid overtime compensation.

Prior to the filing of C. Walker's action, Capitol made an unconditional payment of $7,769.31 to him on or about June 8, 2010. On August 9, 2010, after suit was initiated, Capitol served C. Walker with an offer of judgment (the "Offer") pursuant to Fed. R. Civ. P. 68. The Offer provided for payment of ten thousand dollars ($10,000.00), less the previous unconditional payment amount of $7,769.31, plus reasonable costs and attorneys' fees incurred "to date of service of" the Offer. C. Walker accepted the Offer on August 18, 2010.

On September 9, 2010, the Plaintiff filed his motion for an award of attorneys' fees and costs, seeking a contingency fee of four thousand dollars ($4,000.00) pursuant to his retainer agreement with his lawyer which provided for a fee of forty-percent (40%) of any judgment amount. (Pl.'s Br. Supp. Mot. Atty.'s Fees ("Pl.'s Br.") at Ex. F.) In addition, the motion initially sought an award for costs in the amount of $613.42, subsequently revised to $608.92.[1] (Id. at Ex. E; Pl.'s Suppl. Br. Supp. Mot. Atty.'s Fees ("Pl.'s Suppl.") at Ex. B.)

In support of his petition, Plaintiff asserts that the following fees and costs were reasonably incurred in pursuit of the litigation:

- Attorney Schreiber asserts a reasonable hourly rate of $350.00 per hour, and twelve (12) hours of time (Schreiber Decl. ¶ 7; Pl.'s Br. Ex. E; Pl.'s Suppl. Exs. A, B);

- Attorney Suyes asserts a rate of $250.00 per hour, and eleven and four-tenths (11.4) hours of time (Suyes Decl. ¶ 7; Pl.'s Br. Ex. E; Pl.'s Suppl. Exs. A, B);

- Two paralegals, each working at a rate of $100.00 per hour, expended a total of nine and six-tenths hours of time (Pl.'s Br. ¶ 15, Ex. E); and

- Costs amounted to $608.92 (Pl.'s Suppl. Ex. B.)

Based on the hours expended at the identified rates, C. Walker claims that a total fee award of $8,010.00 would be appropriate, plus costs in the amount of $608.92. However, he seeks only the forty-percent (40%) contingency fee agreed-upon with his attorney, which would result in a

---

[1] A comparison of the original invoice and the supplemental "bill of costs" reveals that Plaintiff has removed $4.50 of costs that were apparently related to M. Walker's case.

3

total fee award of $4,000.00.

A review of the invoice attached as Exhibit E to Plaintiff's initial brief motivated the Court to ask Plaintiff's counsel about two concerns during oral argument. First, almost all of the cost entries, and three of the time entries, refer to "M. Walker" or "Walkers," suggesting work or expenses related, at least in part, to M. Walker's case. (Id.) Furthermore, the invoice does not indicate whether the time or costs incurred were properly apportioned between the two separate clients. (Id.) Second, the itemized costs include thirty-five dollars ($35.00) of costs and five-hundred thirty dollars ($530.00) of attorneys' fees incurred *after* the Offer was tendered on August 9, 2010.

Initially, there was also concern whether counsels' hourly rates were reasonable, save the self-serving, conclusory statements that "[t]he *reasonable hourly rate* for my services is $250.00 [or $350.00] per hour." (Suyes Decl. ¶ 7; Schreiber Decl. ¶ 7 (emphasis added).) Plaintiff has since provided the affidavit of one Lisa Bertini, an experience labor and employment attorney familiar with market conditions in the relevant legal "arena," in support of their asserted hourly rates. (Pl.'s Suppl. Ex. A.) Based on such evidence, the Court is satisfied that counsel's rates are reasonable.

## II. STANDARD OF REVIEW

A trial court's award of attorneys' fees is reviewed for an abuse of discretion. EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 178 (4th Cir. 2009) (citing Johnson v. City of Aiken, 278 F.3d 333, 336 (4th Cir. 2002)). Such a review is "sharply circumscribed" because federal appellate courts recognize that the trial court "has close and intimate knowledge of the efforts expended and the value of the services rendered," so the award will not be overturned unless

"clearly wrong." Plyler v. Evatt, 902 F.2d 273, 277-78 (4th Cir. 1990). The lodestar method, the product of the hours reasonably expended times a reasonable rate, generates a presumptively reasonable fee. Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546 (1986). While it is well within the discretion of the district court to determine the amount of the fee, and to adjust the lodestar product upward or downward as it deems appropriate, "this must be done on a principled basis, clearly explained by the court." Lyle v. Food Lion, Inc., 954 F.2d 984, 989 (4th Cir. 1992).

### III. DISCUSSION

Capitol challenges both the factual and legal basis for C. Walker's claimed attorneys' fees. First, Capitol argues that the lodestar method is the only appropriate manner of assessing attorneys' fees, and that contingency fees are never a permissible measure.[2] In addition, Capitol takes issue with Plaintiff's failure to put forth evidence that counsel's hourly rates are reasonable. Finally, Capitol challenges the hours claimed, in part because some of the work occurred after the date of the Offer, and in part because some of the time entries include work on M. Walker's case. As discussed herein, at least some of the factual issues have been addressed by Plaintiff's submission of supplemental evidence.

**A.      Lodestar Method and Contingency Fees**

The party seeking attorneys' fees has the burden of establishing that the asserted hourly rate is reasonable -- in this case, the Plaintiff. Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990). In doing so, the plaintiff must submit "satisfactory specific evidence of the prevailing market

---

[2] An interesting argument, given that the contingency fee requested is less than what results from application of the lodestar method.

5

rates." Robinson v. Equifax Information Services, LLC, 560 F.3d 235, 245 (4th Cir. 2009) (citing Plyler, 902 F.2d at 277). The Fourth Circuit has provided examples of what evidence will suffice, recognizing "a range of sources from which to draw," including "evidence of the fees [counsel] has received in the past." Westmoreland Coal Co. V. Cox, 602 F.3d 276, 290 (4th Cir. 2010).

A court may not ignore the lodestar approach in favor of a contingency-fee arrangement when determining an appropriate award of fees under FLSA. Lyle v. Food Lion, Inc., 954 F.2d 984, 988 (4th Cir. 1992) (citing Delaware Valley, 478 U.S. at 988). However, "[t]he presence of a pre-existing fee agreement may aid in determining reasonableness." Blanchard v. Bergeron, 489 U.S. 87, 93 (1989)(citation omitted). Moreover, the existence of a contingency fee arrangement will "not impose an automatic ceiling on an award of attorneys' fees." Id.[3] But where a court makes an adjustment based on a contingency fee (the so-called, "contingency enhancement"), the court must determine that such an adjustment is necessary to ensure representation of "comparably situated claimants." Id. (citation omitted). In simple terms, a court must conclude that putative plaintiffs would go unrepresented but for the contingency fee arrangement, for it to be utilized as a determining factor. Thus, the lodestar method is the appropriate starting point for determining attorneys' fees.

**B.    Counsel's Rate**

Even if the Court takes into account the subject contingency fee arrangement in adjusting

---

[3]Plaintiff argues the opposite, apparently suggesting that if he shows that the lodestar is higher than the contingency fee, the Court must impose the lower contingency fee. (Pl.'s Reply at 2 (citing Johnson v. Georgia Highway Express, 488 F.2d 714 (5th Cir. 1974). However, in the context of a fee-shifting statutory scheme, the Supreme Court rejected such a bright-line rule in Blanchard, 489 U.S. at 93.

the lodestar factor, it must nevertheless begin its analysis with calculation of the lodestar. To do so, the Court must first determine whether counsels' rates are reasonable. "[S]atisfactory specific evidence of prevailing market rates" may include affidavits from experienced attorneys in the area of practice who are also familiar with the Court's geographic market. See Robinson, 560 F.3d at 245. The supplemental affidavit from independent, experienced counsel (Ms. Bertini) meets the standard and, therefore, the Court concludes that $250 per hour for Ms. Suyes' services, and $350 per hour for Mr. Schreiber's services, are reasonable rates.

Unfortunately, the same cannot be said with regard to the paralegal rates asserted by Plaintiff's counsel. Plaintiff initially asserted, in conclusory fashion, that $100 per hour was a reasonable rate for such services. Defense counsel countered with evidence that $60 per hour was the reasonable rate for such services. The Plaintiff's supplemental evidence remains deficient on the issue. As Plaintiff has failed to meet his burden of establishing such a reasonable rate for paralegal services, the Court accordingly accepts the Defendant's evidence that $60 per hour is a reasonable rate.

Therefore, in calculating the lodestar, the Court recommends the rates of $60 per hour for paralegal services, $250 per hour for Ms. Suyes' legal services, and $350 per hour for Mr. Schreiber's legal services.

**C.     Hours Spent on this Case**

Next, the Court must determine the amount of time spent on the case for each respective rate level. First, the Defendant asserts that all time entries or costs incurred *after* the date that the Offer was made must be excluded. At oral argument, Plaintiff's counsel conceded that the Offer only provided for attorneys' fees up to the date of the Offer, August 2, 2010, and the Court

therefore will subtract all entries occurring after that date. (Pl.'s Br. at Exs. A, E.)

The Defendant also challenges those time entries that appear to include work performed, at least in part, for M. Walker. (Pl.'s Br. at Ex. E.) Such entries include time spent in settlement conference with this Court.[4] Because the burden of proving attorneys' fees rests with Plaintiff, he must be able to apportion that work between his two clients, and explain why such apportionment is appropriate. By his supplemental evidence, the Plaintiff has now sufficiently apportioned his counsel's time, and the Court is therefore satisfied that the invoice relates solely to work performed on behalf of C. Walker. (Pl.'s Suppl. Ex. B.)

Finally, Defendant challenges whether the total time spent on Plaintiff's case was reasonable, given the almost immediate response by Defendant with its Offer. The Court has reviewed the entirety of counsel's time entries and, with the exceptions discussed above, concludes that the effort expended was reasonably required in the preparation and prosecution of the case. Adjusting counsel's time to deduct all post-Offer time entries, Ms. Suyes spent 10.4 hours and Mr. Schreiber spent 11.1 hours on C. Walker's case. There was also 9.6 hours of paralegal time expended on the case.

Nothing about such totals strikes the Court as being unreasonable. Indeed, when initially preparing to file a complaint, counsel cannot anticipate whether one's decision to initiate suit will result in extended litigation culminating in trial or, as here, an immediate Offer of Judgment. Indeed, counsel should never assume that a case will settle, or counsel risks neglecting one's duty

---

[4]Plaintiff argues that C. Walker attempted to join M. Walker's case, and that prior to the Court's decision that such a move was procedurally improper, it was reasonable that some settlement efforts include both clients. Indeed, the Court recognizes that some efforts to settle C. Walker's matter took place during M. Walker's settlement conference. Nonetheless, counsel must still parse their time entries to reasonably apportion the work between the two clients.

of diligence. See Va. R. Prof. Conduct 1.3 (2010). Thus, the Court will not penalize counsel for due diligence in their early preparation for litigation.

Similarly, Defendant challenges the reasonableness of the hours by asking, "why did it take almost an hour of attorney time to deal with a simple unconditional payment?" (Def.'s Br. at 12.) Plaintiff's explanation is that counsel had to discuss the financial implications of the lawsuit with their client. (Pl.'s Reply ¶ 19.) Again, the Court is unwilling to "split hairs" over the expenditure of one hour of counsel's efforts, especially when it implicates counsel's duty of communication with a client. See Va. R. Prof. Conduct 1.4 (2010). Indeed, upon complete review of the subject invoice, the Court discerns that much of the time was spent in telephone conferences and direct conferences with C. Walker, the client. (See Pl.'s Br. at Ex. E.) It is, of course, eminently reasonable for an attorney to spend time discussing a case with a client, and the Court will not, therefore, question the practice.

Therefore, the Court concludes, based on the supplemental evidence provided, that 10.4 hours of Ms. Suyes' time, 11.1 hours of Mr. Schreiber's time, and 9.6 hours of paralegal staff's time, was reasonably expended on Plaintiff's case.

**D.     Calculation and Adjustment of the Lodestar**

The Court applies the reasonable rates explained above to the hours spent on Plaintiff's case, and concludes that the following lodestar applies herein:

| Professional | Time | Rate | Product |
|---|---|---|---|
| Paralegals | 9.6 hrs | $60/hr | $576.00 |
| Ms. Suyes | 10.4 hrs | $250/hr | $2,600.00 |
| Mr. Schreiber | 11.1 hrs | $350/hr | $3,885.00 |
| | | **TOTAL** | **$7,061.00** |

The Court notes that this lodestar is nearly double the contingency fee of $4,000.00.

Such a dramatic increase over the contractually agreed-upon fee suggests a type of "windfall" in favor of Plaintiff's counsel. Given the unusually short duration of the litigation, and Plaintiff's counsels' sincere desire to collect no more than that which their client was obligated to pay, by contract, such a difference appears excessive to the Court. Such is especially true given how quickly the Defendant offered to admit liability in an effort to avoid the added expenses of extended litigation.

Although a contingency fee arrangement does not result in "an automatic ceiling" on fees, Blanchard, 489 U.S. at 93, it is appropriate for the Court to consider the circumstances of the case in adjusting the lodestar. See, e.g., Grissom v. Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008). "The Johnson factors may be relevant in adjusting the lodestar amount, but no one factor is a substitute for" the lodestar as a starting point. Blanchard, 489 U.S. at 94. Those factors which are highly relevant to this case include: "the attorney's opportunity costs in pressing the instant litigation . . . the attorney's expectations at the outset of the litigation . . . the amount in controversy and the results obtained . . . [and] the nature and length of the professional relationship between attorney and client." Grissom, 549 F.3d at 321 (citing Spell v. McDaniel, 824 F.2d 1380, 1402 n.18 (4th Cir. 1987)).

The manner of resolution of the present case distinguishes it from other cases, such as Blanchard or Grissom, in that it resulted from an unusually early "offer of judgment" pursuant to Fed. R. Civ. P. 68. In Blanchard, the plaintiff prevailed after protracted litigation culminating in a jury trial. 489 U.S. at 89. Although the six-figure judgment in Grissom resulted from an accepted "offer of judgment," unlike the present case, the offer in Grissom was tendered much

10

later in the litigation in the midst of extensive discovery, and included a six-figure award. 549 F.3d at 316.

Here, Capitol offered judgment less than one week after C. Walker filed his Complaint, and Plaintiff accepted it one week thereafter, quickly resolving the litigation and successfully avoiding the effort and costs associated with discovery. Thus, the case imposed little "opportunity costs" on Plaintiff's counsel, especially where it grew out of counsel's representation of Plaintiff's brother in a nearly identical lawsuit. Id. at 321 (citations omitted). Such a quick resolution dramatically abreviated the attorney-client relationship, also weighing against the larger fee award that would result from the lodestar. Id. Moreover, the award of ten thousand dollars ($10,000.00) was relatively modest, further tending to weigh against a fee award of almost three quarters of the total amount of damages. Id.

In any event, the most significant factor weighing in favor of a reduction from the lodestar is counsel's own expectations, both at the outset of litigation and upon consideration of the Offer. Id. Plaintiff's counsel candidly admitted, both in their brief and at oral argument, that they never expected a fee greater than forty percent (40%) of the total award obtained. Moreover, upon receipt of the Offer and consideration with their client, counsel accepted it believing that they were entitled to no more than four thousand dollars ($4,000.00) -- the fee that would result from the fee agreement with their client. Given the role that such a consideration played in accepting the Offer, the Court does not believe it fair or just to award a fee greater than

that which Plaintiff's counsel believed it would or should receive.[5] Thus, the Court recommends a downward adjustment of attorneys' fees from the lodestar of seven thousand sixty-one dollars ($7,061.00) to the contractually agreed-upon contingency fee of four thousand dollars ($4,000.00).

**E.     Costs**

For the reasons explained above, the Court deducts $35.00 in costs that were incurred after August 2, 2010. Thus, the Court concludes that the Plaintiff is entitled to $573.92 in costs reasonably incurred in pursuit of this matter.

## IV. CONCLUSION

In conclusion, and for the reasons discussed herein, it is the recommendation of this Court that the Plaintiff's motion for attorneys fees be GRANTED, in part, and DENIED, in part, and that the Defendant be ORDERED to pay to the Plaintiff the sum of $4,000.00 in attorneys' fees and $573.92 in costs.

Let the Clerk file this Report and Recommendation electronically and forward a copy to the Honorable Henry E. Hudson, with notification to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of**

---

[5] And while not dispositive, counsel presumably had the opportunity to re-negotiate their fee when conferring with the client as to whether or not to accept the Offer. The fact that they chose not to further counsels in favor of limiting the award to that originally agreed upon between the parties.

**any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                                   /s/
                                            Dennis W. Dohnal
                                            United States Magistrate Judge

Richmond, Virginia
Dated: <u>November 30, 2010</u>